**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DONALD RHODES,

       Plaintiff,

v.                                           No. Civ. 16-cv-521 JCH/KK

THE BOARD OF COUNTY COMMISSIONERS
FOR THE COUNTY OF BERNALILLO,
BRANDON BLACKMON, JAROD BEASLEY,
TODD JAMES, MARK KMATZ,
DR. DREW HARREL, and JOHN DOES (I-II),
each in their individual and official capacities,

       Defendants.

## MEMORANDUM OPINION AND ORDER

      This matter comes before the Court on the following motions: (i) the Motion to Dismiss No. I: Dismissal of Plaintiff's Fourth and Fourteenth Amendment Claims (ECF No. 14) filed by Defendants The Board of County Commissioners for the County of Bernalillo, Brandon Blackmon, Jarod Beasley, Todd James, Mark Kmatz, Andrew Harrell (the "County Defendants"); (ii) Plaintiff's Motion and Counsel's Affidavit to Allow Limited Discovery pursuant to Rule 56(d) (ECF No. 22); and (iii) Motion by Plaintiff for Leave to File First Amended Complaint and Memorandum in Support (ECF No. 28). The Court, having considered the motions, pleadings, briefs, and applicable law, concludes that the motion for leave to file a first amended complaint is granted in part and denied in part; the motion to dismiss is denied as moot; and the motion to allow limited Rule 56(d) discovery is denied.

## I.    FACTUAL BACKGROUND

### A.  Search Warrant

      On April 24, 2014, a state judge authorized a Search Warrant for the persons, vehicles, curtilage, and place of 3100 Jane Place, 1717 Gerald SE, and 1713 Gerald SE, as well as a

maroon 2013 Chrysler. Defs.' Ex. A at 1, ECF No. 14-1. In the Affidavit for Search Warrant Detective Tyler Jenkins sought permission to search for, among other things, crack cocaine and other controlled substances, as well as firearms and weapons. *See id.* at 2-4. Detective Jenkins stated that, through his training and experience, persons involved in narcotics frequently arm themselves to protect their contraband and proceeds. *Id.* at 4.

To support his request, Detective Jenkins explained that within the last four weeks, a confidential informant ("CI"), who had worked with another detective in the past and had given the detective reliable information that was never false, contacted Detective Jenkins wishing to exchange information on local narcotics traffickers for money. *Id.* at 5. Detective Jenkins met with the CI in person who stated that he had information on a narcotics trafficker named "Haskel" who drove a Chrysler 300 and lived on Jane Place, which he showed Detective Jenkins on a map. *Id.* The CI said "Haskel" formerly drove a Chevy Impala bearing NM plate 08474UNM. *Id.* Detective Jenkins identified "Haskel" as Haskell Lewis. *Id.* The CI agreed to conduct a controlled buy, called Haskell, ordered a quantity of crack cocaine, and agreed on a meeting place and amount. *Id.* at 5-6. Detective Jenkins searched the CI, gave him money to purchase the crack cocaine, and followed him to 3100 Jane Place. *Id.* at 6. Detective Jenkins watched Mr. Lewis exit apartment #R105, conduct a hand to hand transaction with the CI, and return to his apartment. *Id.* Detective Jenkins met the CI afterwards and took the substance from him, which tested positive for cocaine. *Id.*

Detective Jenkins additionally stated in his Affidavit that he conducted a background check on Mr. Lewis and learned both the Chrysler and Impala were registered to Janie Jackson, Mr. Lewis's mother, who lived at 1717 Gerald SE. *Id.* He further attested:

> A criminal history for Janie reveals at least 2 trafficking arrests. Janie is also associated with 1713 Gerald. The Albuquerque Police Department executed District Court Search warrants at both 1717 and 1713 Gerald simultaneously in 2011. Haskell was present during these search warrants and was arrested. Affiant

has learned Haskell has an extensive criminal history. This includes at least 3 narcotics charges and at least 3 firearm charges. Haskell was arrested in January, 2014 for possession of a firearm by a felon.

During the past week and a half Affiant has conducted several hours of surveillance on Haskell. Affiant has checked on Haskell early morning, afternoon and at night and has never seen him go to a legitimate place of employment. Affiant has followed Haskell to 1717 and 1713 Gerald on almost a daily basis. While conducting surveillance at these two residences affiant has seen an unusual amount of foot and vehicle traffic stop in front of these residences. The vast majority of this traffic stays less than 2-3 minutes and drives away. Affiant has noticed when he enters this neighborhood, people on bicycles begin circling the neighborhood within 5-10 minutes. 1717 and 1713 Gerald specifically, appear to have solid counter surveillance measures in place. For instance, Affiant casually drove into the neighborhood and made a loop. By the time affiant drove by 1713 Gerald, several unidentified persons were standing in the driveway. One person walked towards Affiant[']s vehicle, as he was driving, and attempted to see into the windows. Affiant has also noticed a large amount of vehicles stopping at this residence are not from the neighborhood. In Affiant[']s experience, these could be narcotics customers.

Within the past 72 hours Affiant has again met with the CI. The CI told Affiant it learned Haskell sells crack off a street called Gerald throughout the day. This information was given without Affiant asking and after Affiant learning of Haskell's connection to the Gerald SE addresses.

*Id.* at 6-7.

### B. Facts in Original Complaint

Plaintiff Donald Rhodes is a 57-year old African-American man who, despite becoming disabled in 2010 after a back injury, does small handyman jobs for his neighbors, as his health permits. Compl. ¶¶ 9, 11-12, ECF No. 1-1. Plaintiff has right radial nerve palsy, a nerve condition in which he cannot keep his wrist and hand parallel to the floor when his arm is extended, so his hand droops. *Id.* ¶ 13. At the time of the incident, Plaintiff wore a splint on his wrist. *Id.* at ¶ 13, 28.

On the afternoon of April 29, 2014, Plaintiff, out of kindness and generosity, went to 1717 Gerald SE to fix a faulty electrical outlet for his bedridden elderly neighbor. *Id.* ¶ 15. His neighbor, a woman in her mid-eighties, was the owner and occupant of 1717 Gerald and, along

with Plaintiff and an approximately seven-year-old boy, was present in the house. *Id.* ¶¶ 23-24.

Unbeknownst to Plaintiff, Haskell Lewis was sometimes associated with 1717 and 1713 Gerald, and he had a history of involvement with drugs and firearms. *Id.* ¶ 16. As a result of Mr. Lewis's drug distribution involvement, Bernalillo County Sheriff's Office ("BCSO") obtained a search warrant for both 1717 and 1713 Gerald. *Id.* A few hours prior to the raid, however, deputies had taken Mr. Lewis into custody. *Id.* ¶ 17. Nevertheless, to execute the search warrant, BCSO mobilized two SWAT teams and parked one military-type vehicle in front of the house. *Id.* ¶¶ 17, 25. The Sergeant in charge, Defendant Blackmon, justified the use of the SWAT teams because of the high volume of neighborhood sympathy in the area and the large presence of Bloods street gang members in the neighborhood. *Id.* ¶ 18. The neighborhood has a high concentration of African Americans. *Id.* ¶ 19. Other deputies explained the need for SWAT due to the fortification of the residences and that they were searching for weapons and narcotics. *See id.* ¶¶ 18-21. The only fortification mentioned, however, was a steel screen door and none of the reports mention gang members in the area at the time. *See id.* ¶¶ 21-22.

Officers threw at least one flash-bang grenade into the backyard of 1717 Gerald and into the yard of the house next door, while demanding over the PA system that the occupants of the house come out with their hands up. *Id.* ¶ 25. Numerous officers in SWAT gear proceeded to surround the house. *Id.* Plaintiff, confused and frightened, was cooperative and obeyed commands, although his wrist problems kept him from raising his hands very high over his head, so he was afraid he might be shot. *Id.* ¶¶ 26-27. As he emerged from the house, Plaintiff overheard a deputy say that Mr. Rhodes did not fit the description. *Id.* ¶ 28.

Nonetheless, Defendant Beasley yanked Plaintiff's arms behind his back, cuffed him far too tightly with strip cuffs, forcing them over his wrist brace. *Id.* ¶ 29. The cuffs ripped Plaintiff's skin over his wrists and caused a lack of blood flow to his injured wrist and hand,

creating deep indentations in his skin. *Id.* Another deputy took him to a police vehicle some distance away and ordered him to sit down next to the vehicle, despite that the vehicle was running and spewing exhaust fumes directly onto Plaintiff's face. *Id.* ¶ 30. Defendant James then interviewed Plaintiff, but kept him in custody despite gaining no useful information from him. *Id.* ¶ 31. Defendant James, however, consented to call the reserve doctor to consider having Plaintiff transported to a hospital. *Id.* ¶ 32.

Defendant Kmatz was also at the command post, and after being informed that Plaintiff had mini-strokes in the past, called for the SWAT reserve doctor, Dr. Drew Harrell, and Albuquerque Fire Department rescue to examine Plaintiff. *Id.* ¶¶ 33-34. Defendant Kmatz, however, did not remove the cuffs and kept him next to the exhaust fumes. *Id.* Defendants James and Kmatz told Dr. Harrell that Plaintiff was "feeling anxious." *Id.* ¶ 34. When Dr. Harrell arrived at the command post, Plaintiff told him he was anxious and his hands and wrists hurt. *Id.* Dr. Harrell, after consulting with a person in charge, cut off Plaintiff's handcuffs. *Id.*

After about 30 minutes of confinement, two medics with Albuquerque Ambulance treated Plaintiff at the scene for severe hypertension. *See id.* ¶¶ 36-37. His blood pressure had skyrocketed, registering 197/115, 207/122, and 199/124 over the course of eight minutes. *Id.* Although Plaintiff took blood pressure medication for hypertension, his blood pressure had not been that high when he left his doctor's office that morning. *Id.* ¶ 37. The medics started an IV and transported him to the emergency room. *Id.* When he arrived, he had a headache, his right eye felt as if it was drooping, and he had left-sided chest pain. *Id.* ¶ 38. Plaintiff was increasingly anxious and tearful, and at one point his blood pressure was 220/110. *Id.* After about seven hours in the emergency room, Plaintiff's symptoms had mostly resolved and he was released with a note that explained his high blood pressure was likely related to the events he experienced that day and recommended he continue with his high blood pressure medications. *See id.* ¶¶ 39-40.

Plaintiff experienced other physical distress from the incident: the flash-bang grenade left a ringing sensation in his ears and his left shoulder and chest wall hurt for a couple weeks afterwards. *Id.* ¶ 41. Plaintiff's anxiety also became extremely acute, and he began behavioral health treatment to try to manage his broken sleep and nightmares, disturbing memories, feelings of not being able to breathe or swallow, and panic triggered by the sight of a policeman or being near the house of the event. *Id.*

## II.    PROCEDURAL HISTORY

Plaintiff filed a Complaint on April 20, 2016, alleging the following federal causes of action: (Count I) Fourth and Fourteenth Amendment Claim for excessive force against Defendants Beasley, James, Kmatz, and John Does; (Count II) Fourth and Fourteenth Amendment claim for unreasonable seizure against Defendants Blackmon, Beasley, James, Kmatz, and John Does for his detention without reasonable suspicion and for keeping him detained even after reasonable suspicion dissipated; (Count III) Fourteenth Amendment Due Process Claim for false imprisonment against Defendants Blackmon, Beasley, James, Kmatz, and John Does; (Count IV) Fourth and Fourteenth Amendment Claim for conspiracy to violate his civil rights against Defendants Blackmon, Beasley, James, Kmatz, and John Does; (Count V) Fourth and Fourteenth Amendment municipal liability claim against Bernalillo County; and (Count XI) a claim against all the defendants for violation of his rights under the Americans with Disabilities Act, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act. *See* Compl. 10-15, 19-20, ECF No. 1-1. In addition, Plaintiff asserted an array of state claims in Counts VI-X. *See id.* at 15-18.

Following removal, the County Defendants filed an Answer (ECF No. 5) on June 9, 2016, and a Motion to Dismiss No. I: Dismissal of Plaintiff's Fourth and Fourteenth Amendment Claims (ECF No. 14) on July 26, 2016. The County Defendants sought dismissal of Plaintiff's

Fourteenth Amendment Claims, asserting they are more appropriately analyzed under the Fourth Amendment. *See* Defs.' Mot. to Dismiss 12-14, ECF No. 14. They additionally argued that they are entitled to qualified immunity on Plaintiff's unreasonable seizure claim, because the approximately 30 minute-detention of Plaintiff, an occupant of the premises subject to a search warrant, was permitted under the Fourth Amendment while the search was executed. *See id.* at 14-17. In support of this argument, the County Defendants attached a copy of the search warrant and affidavit in support thereof. *See* Defs.' Ex. A, ECF No. 14-1. With respect to Plaintiff's excessive force claim, the County Defendants asserted they are entitled to qualified immunity and dismissal because the use of handcuffs was objectively reasonable in light of the inherent safety risk in executing a search warrant for drugs and weapons, Plaintiff sustained de minimis injuries, and the handcuffs were removed as soon as he complained. *See* Defs.' Mot. to Dismiss 18-24, ECF No. 14.

On August 19, 2016, Plaintiff filed a Rule 41 voluntary dismissal of his Fourteenth Amendment claims, specifically "Counts III and IV and the Fourteenth Amendment claims contained in Counts I, II and V of Plaintiff's Complaint." Notice, ECF No. 19. Four days later, he filed a response to the motion to dismiss, arguing it should be denied, or alternatively, converted into a motion for summary judgment. Pl.'s Resp. 1, ECF No. 20. Plaintiff argued his seizure was objectively unreasonable because the manner in which he was handcuffed was an excessive use of force, he was detained next to exhaust fumes for 30 minutes, Defendants did not adhere to the knock-and-announce requirement prior to firing flash-bang grenades, and the use of flash-bang grenades was unreasonable under the circumstances. *Id.* at 6-15. Plaintiff also asserted that his reference to the search warrant in his complaint was only to explain the reason why the officers came into contact with him, and that the warrant was not sufficiently central to his claim to permit the Court to consider it without converting the motion to dismiss into one for

summary judgment. *See id.* at 16-19. If the Court were to consider the search warrant, Plaintiff argued that he should be allowed discovery on issues pertaining to the warrant and an opportunity to amend his response after discovery. *See id.* at 19-24.

Plaintiff subsequently filed a Motion and Counsel's Affidavit to Allow Limited Discovery pursuant to Rule 56(d) (ECF No. 22). Defendant responded by seeking an unopposed stay of briefing on Plaintiff's Rule 56(d) motion pending the Court's ruling on whether the County Defendants' motion should be construed as a motion to dismiss or for summary judgment. Unopposed Mot. to Stay, ECF No. 23. Accordingly, the Court granted the motion to stay briefing on the Rule 56(d) motion. Order, ECF No. 26. [1]

Richard Rosenstock entered his appearance on behalf of Donald Rhodes on October 20, 2016. Notice, ECF No. 27. On November 2, 2016, Mr. Rosenstock filed a Motion by Plaintiff for Leave to File First Amended Complaint (ECF No. 28). Plaintiff seeks to add Detective Jenkins as a defendant for violating Plaintiff's Fourth and Fourteenth Amendment rights when he allegedly made numerous false or misleading statements and omitted material facts in preparing the affidavit to search 1717 Gerald. *See* Proposed Am. Compl. ¶¶ 62-65, ECF No. 28-1. Plaintiff contends the affidavit lacked probable cause, resulting in his unlawful seizure pursuant to an invalid warrant. *See id.* The proposed amended complaint adds numerous factual allegations concerning Detective Jenkins' procurement of the search warrant and the contents of his affidavit in support of the warrant. *See id.* ¶¶ 15-30. In addition, the proposed amended complaint does not contain previously enumerated Count III – Fourteenth Amendment Due Process Claim (False Imprisonment); Count IV, conspiracy to violate civil rights; Count V, municipal liability against

---

[1] Defendants also filed a reply in support of their motion to dismiss. *See* Def.'s Reply, ECF No. 24. Although the Court has considered the arguments therein, defense counsel should be aware that changes to margin sizes and font sizes are immediately apparent. *See id.* If counsel's words are so vital that changing fonts and margins in violation of N.M. Local Rule 10.1 is important enough to undertake the risk that the document may be stricken under Local Rule 10.3(c), then the extra words are likely important enough to justify the additional time and expense of filing a motion requesting a page extension.

Bernalillo County; and Count X – Negligence/*Respondeat Superior*. *Compare* Compl. 12-21, ECF No. 1-1, *with* Proposed Am. Compl. 17-24, ECF No. 28-1. Plaintiff's proposed amended complaint also expands upon the allegation that Defendants knew or should have known that he was disabled because of his wrist brace and his statements to the officers about his condition. *See* Proposed Am. Compl. ¶¶ 42-44, 48, 50, ECF No. 28-1. Plaintiff alleges that he told Defendant Beasley and the others that he had a condition limiting the functioning of his hand and that the manner of applying the handcuffs and the restraints themselves were causing him pain, yet they did not act immediately to alleviate his pain by adjusting or removing the handcuffs. *See id.*

The County Defendants do not oppose the dismissal of the medical negligence claim against Dr. Harrell, but they otherwise object to the motion to amend based on untimeliness and futility. *See* Defs.' Resp. 2-3, ECF No. 29. They contend that the reasserted Fourteenth Amendment claims are subject to dismissal for failure to state a claim, and the claims against Detective Jenkins fail because he did not personally participate in Plaintiff's seizure, he obtained a proper search warrant, and Plaintiff does not have standing to challenge the search warrant. *Id.* at 2. Additionally, the County Defendants assert they acted in good faith reliance on the search warrant, regardless of its validity, and his excessive force claim must be dismissed because, even under the facts of the proposed amended complaint, the officers acted reasonably and Plaintiff suffered no more than a de minimis injury. *Id.*

### III.    Motion to Amend Complaint

#### A.  Legal Standard

A court should freely give leave to amend a complaint when justice so requires.  Fed. R. Civ. P. 15(a)(2).  Whether to allow amendment of the pleadings is within the discretion of the trial court. *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).  Leave sought must be freely given in the absence of any justifiable reason for the denial of the motion, such as

undue delay, bad faith, repeated failure to cure deficiencies by amendments, undue prejudice, or futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### B. Analysis

#### 1. Timeliness

Although lateness does not of itself justify denial of an amendment, protracted delay, when it burdens the opposing party and the court, may itself be a sufficient reason to deny amendment. *See Minter*, 451 F.3d at 1205. Denial of leave to amend is appropriate when the plaintiff has no adequate explanation for the delay, is making the complaint a moving target, is attempting to salvage a lost case by untimely suggesting new theories, or knowingly delaying raising an issue until the eve of trial. *See id.* at 1206. Prejudice typically occurs when the amendment unfairly affects the defendant's ability to prepare a defense, such as "when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id.* at 1208.

Discovery has been stayed and the new factual allegations arise out of the same incident. Trial has not been set. Although the County Defendants incurred the expense of preparing a reply in support of their motion to dismiss, which could have been avoided had Plaintiff filed his motion to amend earlier, the prejudice is not so great as to deny leave to amend on untimeliness grounds.

#### 2. Futility

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (quoting *Jefferson County Sch. Dist. v. Moody's Investor's Services*, 175 F.3d 848, 859 (10th Cir. 1999)). To survive dismissal, a complaint must set forth factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When reviewing a

plaintiff's complaint in ruling on a 12(b)(6) motion, the court must accept all well-pleaded allegations as true and construe them in a light most favorable to the plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

Qualified immunity operates to protect officers from the "sometimes hazy border between excessive and acceptable force and to ensure that, before they are subjected to suit, officers are on notice that their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001) (internal citation and quotations omitted), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Officials who are mistaken about the lawfulness of their conduct may still be entitled to qualified immunity if the mistake is reasonable in light of the applicable law and the facts known to them at the time." *Gomes v. Wood*, 451 F.3d 1122, 1136 (10th Cir. 2006). If officials of reasonable competence could disagree about the lawfulness of the challenged conduct, then the defendant is entitled to qualified immunity. *Id.* (quoting *Malley*, 475 U.S. at 341).

Although a plaintiff can overcome the defense without a favorable case directly on point, existing precedent must have placed the constitutional question "beyond debate." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "Clearly established law" must not be defined "at a high level of generality." *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742) (reversing panel majority because it misunderstood the "clearly established" analysis and failed to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment."

*Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)).

Before turning to the merits, the Court must determine whether it may consider the affidavit in support of the search warrant while utilizing the motion to dismiss standard. Plaintiff's proposed amended complaint squarely and in detail sets forth the contents of the affidavit in support of the search warrant. The affidavit is central to proposed Count I, which challenges the validity of the search warrant. In determining futility of amendment, the Court can therefore consider the contents of the search warrant and affidavit in support thereof without the need to provide Plaintiff an opportunity to present all outside material pertinent to a motion under Rule 56. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) ("When a complaint refers to a document and the document is central to the plaintiff's claim, the plaintiff is obviously on notice of the document's contents, and this rationale for conversion to summary judgment dissipates.").

**a. Proposed Amended Count I – Unreasonable Seizure Arising Out Of An Invalid Search Warrant (Detective Jenkins)**

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const., amend. IV. "The Fourteenth Amendment requires the several States to secure these rights." *Michigan v. Summers*, 452 U.S. 692, 694 n. 2 (1981). Probable cause to search or seize exists when, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Under the Fourth Amendment, a search warrant "founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Summers*, 452 U.S. at 705. "An officer's authority to detain incident to a search is

categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" *Muehler v. Men*a, 544 U.S. 93, 98 (2005) (quoting *Summers*, 452 U.S. at 705 n.19). Temporary detention of occupants during a search is permitted to advance the substantial governmental interests of flight prevention, minimization of risk of harm to officers, and facilitation of an orderly search. *Summers*, 452 U.S. at 702-03.

Courts will uphold a warrant if the issuing judge had a substantial basis for concluding that officers would find contraband during the search. *Poolaw v. Marcantel*, 565 F.3d 721, 728-29 (10th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). "[P]robable cause requires a nexus between the place to be searched and the items to be seized." *United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999).  The "affidavit supporting the search warrant need not contain direct evidence or personal knowledge that the items sought are located at the place to be searched;" instead, the magistrate judge may draw reasonable inferences from the information in the affidavit supporting the warrant. *Id. Accord United States v. Biglow*, 562 F.3d 1272, 1279-80 (10th Cir. 2009) (explaining that nexus requirement may be met by magistrate judge's reasonable inferences drawn from evidence of where drug suspect is likely to store contraband or on opinion of officers as to where contraband may be kept); *United States v. Sanchez*, 555 F.3d 910, 912, 914 (10th Cir.2009) (indicating that once probable cause exists that a person is a supplier of illegal drugs, probable cause also exists to search that person's home for contraband and other evidence).

Factors in the analysis of whether a person of reasonable caution would believe contraband is in a particular place include (1) the type of crime, (2) the extent of the suspect's opportunity for concealment, (3) the nature of the evidence sought, and (4) all reasonable inferences as to where a criminal would likely keep such evidence. *Biglow*, 562 F.3d at 1279. A familial relationship alone to someone suspected of criminal activity, without more, does not

establish probable cause to search the family member's home. *Poolaw*, 565 F.3d at 730. In testing the sufficiency of probable cause, courts may look at information received from a confidential informant, so long as other information contained in the warrant corroborate the informant's statement. *United States v. Long*, 774 F.3d 653, 659 (10th Cir. 2014).

An officer violates the Fourth Amendment if, in procuring a warrant, he knowingly, or with reckless disregard for the truth, includes false statements in the affidavit or omits from the affidavit information that, if included, would have vitiated probable cause. *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996). "If evidence is falsified or withheld, the probable cause determination is made by considering whether, excluding the falsified inculpatory evidence or including the withheld exculpatory evidence, probable cause existed to prosecute." *McCarty v. Gilchrist*, 646 F.3d 1281, 1286 (10th Cir. 2011). Where there are no genuine issues of material fact, a court may make the probable cause determination as a matter of law. *Bruner v. Baker*, 506 F.3d 1021, 1028 (10th Cir. 2007).

In Count I of the proposed amended complaint, Plaintiff asserts that the search warrant lacked probable cause to support a belief that the residence at 1717 Gerald, where Haskell Lewis did not live, would contain evidence of a crime. Plaintiff argues that Detective Jenkins used material false and/or misleading statements to secure the search warrant. Specifically, Plaintiff attacks the truthfulness of the following statements in the search warrant: (1) that Janie Jackson had at least 2 trafficking arrests was false and misleading because she had only one such arrest, which occurred 20 years earlier; (2) that in 2011 the Albuquerque Police Department simultaneously executed a search warrant at both 1717 and 1713 Gerald in which Mr. Lewis was present and arrested was deliberately misleading because it does not say that Mr. Lewis was arrested for aggravated battery, making it falsely appear that there was a drug trade history at 1717 Gerald; (3) that Defendant Jenkins witnessed solid counter-surveillance measures in place

at 1717 and 1713 Gerald was false; and (4) the affidavit deliberately created a false impression that Mr. Lewis might have resided in any of the three houses and that drug activity occurred at 1717 Gerald, despite any facts that drug activity actually occurred there. *See* Proposed Am. Compl. ¶¶ 21-24, 27-28, ECF No. 28-1. Defendants argue that, even omitting the purportedly false or misleading statements and including the withheld exculpatory evidence, there was probable cause to support the issuance of the search warrant. The Court agrees.

Turning to the latter purported falsities first, no reasonable magistrate judge would have had the false impression that Mr. Lewis might have resided at 1717 Gerald based on the contents of the affidavit itself. Detective Jenkins clearly stated that the CI said Mr. Lewis lived on a street called Jane place, and that Mr. Lewis's mother lived at 1717 Gerald. Nor does the affidavit leave the allegedly false impression that Detective Jenkins or his CI had seen narcotics at the 1717 Gerald residence or witnessed hand-to-hand transactions there. Plaintiff contends it was false to say that 1717 Gerald had "solid counter-surveillance measures in place," because there were no surveillance cameras. He does not allege, however, that Detective Jenkins lied about his observations concerning the activity around the residences. The Court will therefore assume for purposes of this motion that using the phrase "solid counter-surveillance measures" was misleading, and will exclude it when considering whether the affidavit supported a probable cause finding, but the Court will consider Detective Jenkins' underlying observations.

Based on the CI's information and Detective Jenkins' observations of two controlled buys between the CI and Mr. Lewis, there was probable cause to believe Mr. Lewis engaged in drug trafficking. *Cf. United States v. Artez*, 389 F.3d 1106, 1111-12 (10th Cir. 2004) (concluding that probable cause existed because of sufficient corroboration of informant's tip using controlled purchases); *United States v. Avery*, 295 F.3d 1158, 1169 n.10 (10th Cir. 2002) (concluding that the controlled drug transaction, in which the informant participated,

corroborated the informant's allegations). Although the controlled buys took place at Mr. Lewis's residence on Jane Place, the requisite nexus existed between the evidence sought and 1717 Gerald based on the following: (i) the CI, whose past information had been corroborated, without prompting said s/he had learned Haskell sells crack off a street called Gerald throughout the day; (ii) the cars the CI said Mr. Lewis drove were registered to Janie Jackson, Mr. Lewis's mother, who lived at 1717 Gerald; (iii) Janie Jackson had one trafficking arrest 20 years earlier; (iv) in 2011, APD officers executed a search warrant at 1717 Gerald during which Mr. Lewis was present and arrested for aggravated battery; (v) Detective Jenkins conducted surveillance for a week and half on Mr. Lewis and observed that he never went to a legitimate place of employment but went to 1717 and 1713 Gerald on almost a daily basis; (vi) Detective Jenkins observed an unusual amount of foot and vehicle traffic in front of these residences that stayed for 2-3 minutes and then drove away, which in his experience was consistent with the behavior of narcotics customers; (vii) Detective Jenkins observed people circling the neighborhood on bicycles within 5-10 minutes of him entering the neighborhood; and, (viii) in one instance, when Detective Jenkins drove in a loop in the neighborhood, several persons came out and stood in the driveway, and one of them walked towards his car and attempted to see into the windows.[2]

A reasonable magistrate judge could infer that Mr. Lewis had a sufficiently strong connection to his mother's 1717 Gerald residence that he might conceal evidence of his crimes therein. This case is not one in which officers relied solely on a familial connection to justify the search of the residence; instead, Detective Jenkins' surveillance of 1717 Gerald provided corroborating evidence of the CI's statement that Mr. Lewis sold crack off of Gerald Street. The

---

[2] Plaintiff alleges that Defendant Jenkins falsely stated in a Warrant Service Risk Assessment that 1717 Gerald was believed to be a "drug manufacturing location" and/or "a large scale narcotics distribution point." Proposed Am. Compl. ¶ 25, ECF No. 28-1. It is unclear whether the authorizing judge considered the risk assessment. Inferring that he did, and excluding the allegedly false statements from consideration, the Court nonetheless finds probable cause supported the issuance of the search warrant for 1717 Gerald.

specific facts in the affidavit linking Mr. Lewis's drug activity to 1717 Gerald, and the reasonable inferences to be drawn therefrom, support the conclusion that there was a fair probability that Mr. Lewis would conceal evidence of his narcotics trafficking inside the 1717 Gerald residence. *Cf. Artez*, 389 F.3d at 1114 (stating that police observation of series of visitors entering residence and staying for only short period of time provided some additional corroboration of informant's tip when interpreted in light of officer's extensive experience).

Moreover, officers are immune from suit for an unlawful arrest if there was "arguable probable cause," in other words, if "the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014). To overcome a qualified immunity defense, the plaintiff must show that a reasonably well-trained officer in Detective Jenkins' position would have known that his affidavit failed to establish probable clause and he should not have applied for the warrant. *See Malley*, 475 U.S. at 345 (relying on *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984)); *Poolaw*, 565 F.3d at 735. "[G]ood faith may exist when a minimal nexus between the place to be searched and the suspected criminal activity is established." *United States v. Gonzales*, 399 F.3d 1225, 1231 (10th Cir. 2005). In analyzing a seizure of a bystander pursuant to *Summers*, the question is whether the actions taken by the officers were objectively reasonable based on the facts known to them at the time; in other words, would a reasonable officer have believed that he was validly authorized to execute the warrant and incidentally detain occupants thereof. *See Croom v. Balkwill*, 645 F.3d 1240, 1249-50 (11th Cir. 2011).

After excluding the alleged falsified inculpatory evidence and including the withheld exculpatory evidence, the affidavit established, at least, a minimal nexus between 1717 Gerald and Mr. Lewis's drug activity. The CI's statement that Mr. Lewis sold crack off a street called Gerald and Detective Jenkins' observations of Mr. Lewis nearly daily going to 1717 Gerald and

activity consistent with narcotics trafficking at that residence provided, at minimum, arguable probable cause. Detective Jenkins would therefore be entitled to qualified immunity as a matter of law and amendment of the complaint to add Count I would be futile. The Court will therefore deny Plaintiff's request to amend the complaint to add an unreasonable seizure claim against Defendant Jenkins.[3]

### b. Count II – Unreasonable Seizure, Including the Use of Excessive Force

Defendants have sought to dismiss Count II in their motion to dismiss. Plaintiff in his proposed amended complaint seeks to add factual allegations concerning this claim. The Court will therefore consider the validity of Count II in light of the facts as alleged in the proposed amended complaint to determine whether the claim could survive with the additional factual support.

Inherent in an officer's authority to detain is the authority to use reasonable force to effectuate the detention. *See Mena*, 544 U.S. at 98-99. A limited detention can become unreasonable if it extends beyond its initial justification, but law enforcement officers may detain occupants of a residence for the entire length of a routine and diligently pursued search based on a warrant. *Croom*, 645 F.3d at 1251. The use of handcuffs during execution of a search warrant may also be reasonable:

> The governmental interests in not only detaining, but using handcuffs, are at their maximum when, as here, a warrant authorizes a search for weapons and a wanted gang member resides on the premises. In such inherently dangerous situations, the use of handcuffs minimizes the risk of harm to both officers and occupants. *Cf. Summers*, *supra*, at 702–703, 101 S.Ct. 2587 (recognizing the execution of a warrant to search for drugs "may give rise to sudden violence or frantic efforts to conceal or destroy evidence"). Though this safety risk inherent in executing a search warrant for weapons was sufficient to justify the use of handcuffs, the need to detain multiple occupants made the use of handcuffs all the more reasonable.

*Mena*, 544 U.S. at 100.

---

[3] In light of this ruling, the Court need not consider Defendants' additional arguments concerning lack of standing and lack of personal participation in the execution of the warrant.

The warrant in this case authorized the search for drugs and weapons. Consequently, officers had the categorical authority to detain Plaintiff in handcuffs during the execution of the search warrant because he was an occupant of the residence to be searched. *Cf. Muehler*, 544 U.S. at 99-100 (holding that use of correctly applied handcuffs to detain occupants during search of house pursuant to warrant was reasonable where warrant authorized search for weapons and wanted gang member resided on premises); *United States v. Johnson*, 414 F. App'x 176, at *4 (10th Cir. Mar. 3, 2011) (concluding that officers' display of firearms and use of handcuffs on occupants during execution of search warrant was reasonable because search for methamphetamine and firearms and high level of traffic in area made search particularly dangerous). Although officers had already arrested Mr. Lewis, the safety risk inherent in executing a warrant to search for weapons is sufficient to justify the use of handcuffs. *Cf. Wigley v. City of Albuquerque*, 567 F. App'x 606, 610 (10th Cir. June 4, 2014) (unpublished) (explaining that officer was entitled to rely on warrant that permitted search for weapon to detain plaintiffs, two in handcuffs, even though affidavit suggested gun had been moved to another location, to minimize risk of harm to officers). Alternatively, it was not clearly established that the mere use of handcuffs to detain Plaintiff was unlawful under the circumstances. *See* cases cited *supra*.

The use of handcuffs may in some instances, however, exceed the scope of what is reasonable force. Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395-97 (1989). The reasonableness of the officer's belief as to the appropriate level of force should be judged from the perspective of an officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* at 396. Among the factors that courts should consider in determining whether a police officer applied excessive force are (1) the severity of the crime at issue, (2) whether the suspect poses an

immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.*

Where handcuffing is permissible but the manner of handcuffing is alleged to be excessive, the *Graham* factors are less helpful in evaluating the *degree* of force applied. *Fisher v. City of Las Cruces*, 584 F.3d 888, 896 (10th Cir. 2009). "In those cases, an examination of the resulting injury supplements [the court's] inquiry." *Id.* at 896-97. To recover on an excessive force claim in a handcuffing case, the Tenth Circuit has required a plaintiff to show both that the force used was more than reasonably necessary and an actual physical or emotional injury that is not de minimis. *Id.* at 897 (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1129 n.5 (10th Cir. 2007)).

Applying the *Graham* factors, handcuffing was permissible categorically due to the severity of the crimes for which the search warrant applied. Nevertheless, according to the complaint, despite that Plaintiff was cooperative, compliant, and not a flight risk, Defendant Beasley yanked and pulled his shoulders hard enough to cause him shoulder pain for weeks and forced the cuffs over his clearly visible brace in a manner that ripped his skin and restricted blood flow. *See* Proposed Am. Compl. ¶¶ 42-43, 56, ECF No. 28-1. The allegation of ripping of skin suggests more than mere red marks or superficial abrasions. In addition to the allegations of physical injury, Plaintiff alleges he suffered extreme anxiety for which he sought treatment following the incident. Construing all inferences in Plaintiff's favor, Plaintiff told Defendants Beasley, James, and Kmatz that the cuffs were too tight and causing pain, yet they did not act to alleviate his pain and discomfort. *See id.* ¶¶ 44, 47-50. Assuming the truth of all facts in the proposed amended complaint, a reasonable jury could conclude that the manner of handcuffing was excessive under the circumstances and his injury constituted more than de minimis injury. *Compare Fisher*, 584 F.3d at 891-92, 95-96 (reversing qualified immunity where jury could find

that officers' handcuffing of man who had shot himself painfully exacerbated his apparent injuries unreasonably by causing him excruciating pain); *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1208-09 (10th Cir. 2008) (affirming district court's denial of qualified immunity to defendants for unreasonably tight handcuffing where plaintiff presented evidence that he made several complaints that the cuffs were too tight and his wrists were hurting, officers ignored his complaints, and pain in his wrists had not subsided since arrest and his neurologist diagnosed him with permanent nerve injury), *with Koch v. City of Del City*, 660 F.3d 1228, 1247-48 (10th Cir. 2011) (upholding summary judgment for defendant on plaintiff's excessive force claim based on tight handcuffing that caused sores on wrists and arms, where plaintiff did not show actual, non de minimis injury because hospital reports merely showed superficial abrasions and, despite complaints of numbness, she did not submit evidence that any neurological injury was detected by physicians); *Cortez*, 478 F.3d at 1129 (concluding injury resulting from tight handcuffing was de minimis and insufficient to support an excessive force claim when the only evidence in the summary judgment record was plaintiff's affidavit asserting that the handcuffs left red marks that were visible for days).[4]

At the time of the incident, the right to be free from unduly tight handcuffing that causes actual injury was clearly established where the plaintiff notified defendants that the handcuffing was causing him injury. *See Vondrak*, 535 F.3d at 1209 (citing *Cortez*, 478 F.3d at 1129 (2007)). It was also clearly established that all officers have an affirmative duty to intervene to protect a citizen from an excessive use of force by another officer, and liability will attach if the officer had a realistic opportunity to intervene to prevent the harm from occurring. *See id.* (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). The inferences and allegations indicate that Defendant Beasley yanked Plaintiff's arms forcibly enough to cause him significant shoulder

---

[4] Notably, the *Koch* and *Cortez* cases were decided on a summary judgment record that demonstrated the alleged injuries were not permanent and were de minimis.

pain that lasted weeks, and Plaintiff notified Defendants Beasley, James, and Kmatz that the handcuffs were too tight and causing him pain, yet they did not act to alleviate the pain, despite that Plaintiff was noticeably wearing a wrist brace and was compliant and cooperative throughout. Assuming these facts to be true, it would have been clearly established to Defendants that they were violating clearly established law. *See id.*

For all the foregoing reasons, Plaintiff's request to amend his complaint to add allegations as to Count II is not futile and will be granted.[5]

### c. Count III – Unreasonable Seizure (Defendants Blackmon, Beasley, James and Kmatz)

Plaintiff asserts another unreasonable seizure claim against Defendants Blackmon, Beasley, James, and Kmatz in Count III. "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, … in 'objective good faith.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *United States v. Leon*, 468 U.S. 897, 922-23 (1984)). Courts generally presume an officer executes a search warrant in good faith. *United States v. Campbell*, 603 F.3d 1218, 1230 (10th Cir. 2010). The presumption dissipates if the affidavit is so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable, in other words, when the affidavit is devoid of factual support. *Id.*

---

[5] The parties also dispute whether Defendants' actions in using a flash bang grenade without first knocking and announcing their presence and placing Plaintiff by exhaust fumes were unreasonable applications of force. Plaintiff alleges a specific injury from the force of the flash-bang device – ringing in his ears. Events immediately connected to a seizure are all taken into account as part of the totality of the circumstances in determining whether a seizure is reasonable. *See Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1189 (10th Cir. 2001). In light of the Court's ruling that Plaintiff has stated a claim that Defendants Beasley, James, and Kmatz violated his Fourth Amendment rights to be free of excessive force, rights which were clearly established at the time, the Court need not consider at this juncture whether each additional separate fact, specifically the use of the flash-bang grenade or placing and keeping him next to exhaust fumes, is sufficient on its own to state a Fourth Amendment claim. *See id.* at 1193-94 (explaining that failure to announce presence before entering home, like use of harsh language, are facts that bear upon Fourth Amendment totality-of-the-circumstances reasonableness inquiry).

For the reasons given *supra*, the affidavit was not so lacking in indicia of probable cause to render belief in its existence unreasonable. Defendants were therefore entitled, as a matter of law, to rely on the search warrant to execute the search of the residence and detain occupants therein, including Plaintiff. Alternatively, it was not clearly established under the circumstances Defendants confronted that they could not rely on the search warrant to detain Plaintiff. Consequently, to the extent Count III is solely dependent on the invalidity of the search warrant and the fact of Plaintiff's detention as a theory of liability, that part of the claim should be dismissed.

To determine an unlawful seizure claim, however, courts must consider the totality of the circumstances, including the use of force. *See Holland*, 268 F.3d at 1189. "[I]n cases involving claims of both unlawful arrest and excessive force arising from a single encounter, it is necessary to consider both the justification the officers had for the arrest and the degree of force they used to effect it." *Cortez*, 478 F.3d at 1127. Defendant Blackmon is named in Count III, but not Count II. The proposed amended complaint states that Defendant Blackmon was the "Sergeant in charge of the raid" who made the decision to use military-like police power. Proposed Am. Compl. ¶ 33, ECF No. 28-1. Plaintiff alleges that Defendant Blackmon battered him by continuing to keep him in handcuffs. *Id.* ¶ 88. Construing all inferences in Plaintiff's favor, these allegations indicate Plaintiff's Count III claim incorporates his allegations of excessive force as well. As for Defendants Beasley, James, and Kmatz, the Court has determined Plaintiff has stated an excessive force claim against them, so the Court will not dismiss Count III. The same analysis applies to Defendant Blackmon concerning his alleged role in failing to respond to Plaintiff's complaints of excessively painful handcuffing. The Court therefore need not dissect each additional allegation of force separately at this time, as they form part of the totality of the circumstances. *See supra* n.5.

Consequently, the County Defendants are not entitled to qualified immunity and dismissal of Count III to the extent it incorporates Plaintiff's claims of excessive force. Plaintiff's request to amend his complaint to add allegations supporting Count III is not futile and will be granted.

### d. Fourteenth Amendment Claims

Plaintiff states that he does not assert any separate substantive Fourteenth Amendment due process claim in his amended complaint; rather, he only referenced the Fourteenth Amendment because it made the Fourth Amendment applicable to local state officials. *See* Pl.'s Reply 4-5, ECF No. 33. In light of this clarification, the Court need not consider the County Defendants' arguments that it would be futile to add separate Fourteenth Amendment claims, as none are asserted.

### C. Conclusion

Plaintiff's motion to amend his complaint will therefore be granted in part and denied in part. The Court will grant Plaintiff leave to file his proposed amended complaint, so long as it does not contain his unreasonable seizure claim against Detective Jenkins, as that claim would be subject to dismissal. Plaintiff otherwise has leave to file his proposed amended complaint and must do so within ten days of entry of this Memorandum Opinion and Order.

## IV.    Motion to Dismiss No. I: Dismissal of Plaintiff's Fourth and Fourteenth Amendment Claims (ECF No. 14)

Given the Court's ruling permitting Plaintiff to file an amended complaint, subject to the limitation described herein, the County Defendants' motion to dismiss counts in the original complaint is now moot and should be denied.

## V.    Plaintiff's Motion and Counsel's Affidavit to Allow Limited Discovery pursuant to Rule 56(d) (ECF No. 22)

Plaintiff moved under Rule 56(d) for limited discovery should the Court consider the

search warrant and affidavit in support thereof that the County Defendants attached to their motion to dismiss. As explained *supra*, Plaintiff subsequently moved to amend the complaint, adding extensive factual allegations concerning the contents of the affidavit and making the search warrant and affidavit in support thereof central to one of his proposed claims. The Court therefore considered the affidavit in ruling on the motion to amend the complaint, but was not required to use a summary judgment standard. Accordingly, Plaintiff is not entitled to Rule 56(d) discovery and his motion will be denied.

**IT IS THEREFORE ORDERED** that

1. Motion by Plaintiff for Leave to File First Amended Complaint and Memorandum in Support (**ECF No. 28**) should be **GRANTED IN PART AND DENIED IN PART** as follows:

   a. Plaintiff's request for leave to file his proposed amended complaint containing Count I, the Fourth Amendment unreasonable seizure claim against Detective Tyler Jenkins, is **DENIED** for futility.

   b. Plaintiff's request for leave to file his proposed amended complaint is otherwise **GRANTED** to the extent it complies with this opinion.

   c. Plaintiff must file a proposed amended complaint consistent with this opinion **WITHIN TEN DAYS OF THE FILING OF THIS MEMORANDUM OPINION AND ORDER**.

2. The County Defendants' Motion to Dismiss No. I: Dismissal of Plaintiff's Fourth and Fourteenth Amendment Claims (**ECF No. 14**) is **DENIED** as **MOOT**.

3. Plaintiff's Motion and Counsel's Affidavit to Allow Limited Discovery pursuant to Rule 56(d) (**ECF No. 22**) is **DENIED**.

4.  Discovery may proceed as directed by the Honorable Khirtan Khalsa.


_____
**UNITED STATES DISTRICT JUDGE**